2023 IL App (1st) 221151-U

No. 1-22-1151

Order filed March 31, 2023

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| SHELTER MUTUAL INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff and Counterdefendant-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | Consolidated Nos. |
| | ) | 18 CH 4794 |
| HALEY FLYNN and LARRY HERSKOVITZ, | ) | 17 M1 119255 |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Haley Flynn, Defendant and Counterplaintiff-Appellant). | ) | Honorable |
| | ) | David B. Atkins, |
| -------------------------------------------------------------------- | ) | Judge, presiding. |
| HALEY FLYNN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SHELTER MUTUAL INSURANCE COMPANY, and DANNA KRISCHKE, | ) | |
| | ) | |
| Defendants | ) | Honorable |
| | ) | Daniel P. Duffy, |
| (Shelter Mutual Insurance Company, Defendant-Appellee). | ) | Judge, presiding. |
| | ) | |

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court.
Justices Rochford and Martin concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The circuit court's ruling on cross-motions for summary judgment is affirmed where the court granted summary judgment in favor of the insurer and against the insured, finding that the insured's vehicle at issue was not covered under her insurance policy and the insurer did not have a duty to defend or indemnify her for damage she caused to another vehicle.

¶ 2   The instant appeal arises from a dispute over a motor vehicle insurance policy Shelter Mutual Insurance Company (Shelter Mutual) issued to Haley Flynn, who was involved in an accident with a vehicle owned by Larry Herskovitz. When Flynn filed a claim under her policy with Shelter Mutual, it denied her request for coverage, claiming that her 2009 vehicle was not insured under her policy.

¶ 3   Flynn filed a small-claims lawsuit in the circuit court against Shelter Mutual based on its denial of coverage, and Shelter Mutual filed a counterclaim in the small-claims action, seeking declaratory judgment as to its duty to provide Flynn coverage. After Herskovitz sued Flynn, Shelter Mutual filed a separate declaratory judgment action in the circuit court's chancery division, seeking a declaration that it did not owe Flynn a duty to defend or indemnify with respect to Herskovitz's lawsuit against her.

¶ 4   Flynn's and Shelter Mutual's two lawsuits were consolidated and transferred to the chancery division. Both Flynn and Shelter Mutual filed cross-motions for summary judgment, and the circuit court granted summary judgment in favor of Shelter Mutual and against Flynn.

¶ 5     Flynn appeals, arguing summary judgment in favor of Shelter Mutual on its cross-motion against her was error because (1) Shelter Mutual's declaratory judgment claims improperly raised the same coverage issue as its pre-suit coverage denial, supplanted an existing remedy, and deprived Flynn of her chosen forum in small claims court, (2) Flynn was entitled to discovery on the issue of the authority of Shelter Mutual's agent, (3) the agent's consent to Flynn's request to switch her vehicle coverage was not required, (4) the agent's duty and Shelter Mutual's knowledge support reformation of the policy, and (5) Illinois law and policy require minimum liability coverage for Herskovitz's vehicle damages.

¶ 6     Flynn also argues that she was entitled to summary judgment against Shelter Mutual because it waived its coverage defense and ratified and reformed the policy by issuing new endorsements showing coverage for Flynn's 2009 vehicle on the accident date and by failing to return Flynn's premiums. In addition, Flynn argues that she properly pled a claim for Shelter Mutual's abuse of process; the circuit court abused its discretion by denying her motion to amend her complaint; and she is entitled to attorney fees based on Shelter Mutual's vexatious and unreasonable conduct.

¶ 7     For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 8                                          I. BACKGROUND

¶ 9     On October 17, 2016, Flynn purchased a 2010 Honda Civic (2010 vehicle) and sent a text message to Shelter Mutual insurance agent Danna Krischke, requesting insurance coverage for the vehicle. Krischke obtained coverage for Flynn under a Shelter Mutual policy with effective dates

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

from October 17, 2016, through February 16, 2017. Five days later, on October 22, 2016, Flynn traded in the 2010 vehicle for a 2009 Honda Civic (2009 vehicle). On October 31, 2016, Flynn sent Krischke a text message asking her to switch Flynn's insurance policy to the 2009 vehicle. Krischke, however, never made that change, and the policy was renewed later with the 2010 vehicle listed as the covered vehicle. Specifically, on January 24, 2017, Shelter Mutual billed, and Flynn paid, a policy premium of $711.20, and Shelter Mutual issued Flynn policy documents reflecting a policy period of February 16, 2017, through August 16, 2017, but still showing the insured vehicle as the 2010 vehicle that Flynn had traded in, rather than the 2009 vehicle.

¶ 10    On March 16, 2017, Flynn was involved in a motor vehicle accident when she rear-ended a vehicle owned by Larry Herskovitz. The collision caused damage to Flynn's 2009 vehicle in the amount of $4700, which she paid directly to the repair shop. She also incurred $1029.68 in auto rental expenses while her vehicle was being repaired, which she paid as well. The collision also caused $4606.42 in damage to Herskovitz's vehicle, which Herskovitz's insurer paid.

¶ 11    On March 29, 2017, Flynn telephoned Krischke to inform her of the collision but was told that the 2009 vehicle "was not the covered vehicle under the policy." Krischke then charged Flynn an additional $2.80 in premium payments and sent Flynn new insurance cards showing an effective term from March 29, 2017, through August 16, 2017, and listing the 2009 vehicle as the covered vehicle. Neither Krischke nor Shelter Mutual offered to refund any premiums Flynn had paid on the 2010 vehicle during the policy period. The record does not indicate that Flynn requested any such refund.

¶ 12    When Flynn filed a claim under her policy with Shelter Mutual, it denied her request for coverage on April 12, 2017, claiming that the policy covered the 2010 vehicle and not the 2009

vehicle. On April 26, 2017, Flynn e-mailed Shelter Mutual's customer service, asking for her "current evidence of insurance cards" and received insurance cards showing a policy period from February 16, 2017, through August 16, 2017, and listing the 2009 vehicle as the covered vehicle. On May 9, 2017, Flynn again e-mailed Shelter Mutual's customer service with the same request and received the same cards.

¶ 13 On July 7, 2017, Flynn filed a four-count small-claims complaint in the municipal division of the circuit court against Shelter Mutual and Krischke, alleging that Flynn was the named insured on an automobile insurance policy issued by Shelter Mutual and procured by Krischke that provided Flynn with collision and liability coverage. Flynn alleged that when she sent Krischke the text message on October 31, 2016, asking her to switch the insurance policy to the 2009 vehicle, Flynn "relied on Krischke to make the change and believed the change was done based on their past dealings."

¶ 14 Count I of the complaint was for breach of contract against Shelter Mutual and alleged that a valid contract for insurance existed between Flynn and Shelter Mutual, which covered the 2009 vehicle for damage to it by collision, for auto rental expenses, and for liability to others caused by the vehicle. Count I further alleged that Shelter Mutual breached the contract by refusing to pay Flynn for damage to the 2009 vehicle and for her auto rental and by refusing to pay for Flynn's liability to Herskovitz, "thereby making Flynn an uninsured motorist despite Flynn paying the full premiums demanded by Shelter [Mutual] for the policy period."

¶ 15 Count II of the complaint was for "waiver" against Shelter Mutual and alleged that Shelter Mutual had affirmatively waived its right to deny coverage for the 2009 vehicle when it kept the premiums Flynn paid instead of refunding the premiums or issuing a new policy for the 2009

vehicle. Count II further alleged that Shelter Mutual waived its right to deny coverage for the 2009 vehicle by issuing evidence of insurance coverage cards on April 26, 2017, and May 9, 2017, that listed the 2009 vehicle as the covered vehicle for the policy period effective February 16, 2017, through August 16, 2017.

¶ 16    Count III of the complaint was for "vexatious and unreasonable conduct" under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2016)) against Shelter Mutual and alleged that Shelter Mutual had engaged in vexatious and unreasonable conduct in denying coverage for the collision despite issuing insurance cards showing the 2009 vehicle as a covered vehicle and despite keeping Flynn's insurance premiums.

¶ 17    Finally, count IV of the complaint was for negligence against Krischke and alleged that she had a duty to exercise reasonable skill, care, and diligence to procure insurance on the correct vehicle. Count IV alleged that Krischke undertook the duty to act as Flynn's insurance agent and to procure auto insurance for her but breached that duty by failing to make the change that Flynn requested on October 31, 2016, which would have changed the covered vehicle on the policy.

¶ 18    Attached to Flynn's complaint were several exhibits. First was a copy of her insurance policy with Shelter Mutual, which states that it is "evidence of insurance as of 05/09/2017," which was after the March 16, 2017 collision at issue. Flynn is listed as the named insured, and Krischke is listed as the agent. The policy lists an effective date of February 16, 2017, through August 16, 2017, and states that the "described automobile" was the 2009 vehicle. The definitions section of the policy contains the following relevant definitions.

"**Described auto**[2] means the vehicle described in the **Declarations**, but only if a **named insured owns** that vehicle. It includes:

\* \* \*

(d) A temporary substitute auto.

\* \* \*

**Non-owned auto** means any auto being **used**, **maintained**, or **occupied** with **permission**, other than:

(a) The **auto** listed in the **Declarations**;

(b) An **auto owned** by any **insured**, or a **resident** of any **insured's** household; or

(c) An **auto** that any **insured**, or a **resident** of any **insured's** household has **general consent** to **use**.

A **rental auto** is a **non-owned auto** if it is not an auto described by (a), (b), or (c) above, is not a **temporary substitute auto**, and otherwise meets the definition of **rental auto**."

¶ 19    The policy also included a provision titled "Thirty-Day Temporary Insurance on Replacement Autos," which provided, in relevant part:

---

[2] The policy denotes defined terms within the policy in boldface type.

"The temporary insurance provided under this section does not apply to any **claim** that is covered by any other policy of insurance regardless of the types of coverage provided by that policy.

The insurance provided by this policy with respect to the **described auto** applies to any other **auto** in which **you** acquire **ownership**, if it replaces the **described auto** and **you** no longer **own** the **described auto**. The insurance on this replacement **auto** includes only those coverages that applied to the **described auto**. This coverage expires at the earlier of:

> (1) 12:01 A.M. on the thirty-first day after **you** acquire **ownership** of the **auto**; or

> (2) The date this policy lapses.

To obtain this temporary coverage, **you** must notify **us**, while this policy is in force, and within 30 days after the date **you** acquire **ownership** of the replacement **auto**, that **you** want this policy to apply to it."

¶ 20 With respect to coverage for bodily injury and property damage liability coverage, the policy provided that: "**We** will pay **damages** on behalf of an **insured**; but this agreement is subject to all conditions, exclusions, and limitations of **our** liability, stated in this policy." The policy further provided, in relevant part:

"**Damages** means money an **insured** is legally obligated to pay another person because of **bodily injury**, **property damage**, or **consequential loss**, caused by an **occurrence** resulting from **that insured's ownership**, **maintenance**, or **use**, of the **described auto** or a **non-owned auto**."

¶ 21    With respect to collision coverage, the policy provided, in relevant part:

"**We** will pay the **direct loss** resulting from **property damage** to the **described auto**

if it is caused by:

(1) Accidental upset of the described auto; or,

(2) **Accidental** collision between the **described auto** and another object,

other than:

* * *

But this agreement is subject to all conditions, exclusions, and limitations of **our** liability,

stated in this policy."

¶ 22    Also attached to Flynn's complaint were several text messages between Flynn and Krischke. One set of text messages, sent on October 17, 2016, discussed insurance coverage for the 2010 vehicle, and one of Krischke's responses included an image of an insurance card showing coverage for the 2010 vehicle from October 17, 2016, through February 16, 2017. Another text message, sent October 31, 2016, asked Krischke to "switch my car insurance to the 2009 White Honda Civic"; there was no text from Krischke in response to this message.

¶ 23    Additionally, attached to Flynn's complaint was a copy of a receipt for a renewal policy, which showed that Shelter Mutual received a premium payment of $711.20 on January 24, 2017. The "Risk Description" on the receipt listed the 2010 vehicle. Another receipt showed that Shelter Mutual received a premium payment of $2.80 on March 29, 2017; the "Risk Description" on that receipt listed the 2009 vehicle.

¶ 24    Finally, attached to Flynn's complaint was an April 12, 2017 letter from Shelter Mutual. The letter indicated that on April 6, 2017, Flynn reported a loss occurring on March 16, 2017, and

that "[o]ur investigation revealed that you acquired a 2009 Honda Civic *** on October 22, 2016. You were driving the 2009 Honda Civic on March 16, 2017, when you were involved in the accident." The letter further stated that Flynn had informed Shelter Mutual that she had traded in the 2010 vehicle for the 2009 vehicle and that she had sent Krischke text messages on October 31, 2016, asking her to change the policy accordingly. After quoting the policy, the letter stated:

"Based on our investigation and this policy language, Shelter [Mutual] believes the policy does not cover this claim. Specifically, the loss occurred outside of the 30 days of temporary coverage provided under your 2010 Honda Civic's policy, for the 2009 Honda Civic that you acquired on October 22, 2016. After the 30 days of temporary coverage lapsed, you did not purchase a policy for the 2009 Honda Civic. Because no policy was purchased for the 2009 Honda Civic after you acquired it, and this loss did not occur during the available 30 day temporary coverage, there is no coverage for this accident.

Further, the policy's liability coverage applies to **damages** owed by an insured. The policy defines **damages** as money that an **insured** must pay because of an **occurrence** resulting from the **ownership**, **maintenance** or use of the **described auto**. The collision coverage applies to **property damage** that results [from] an **accidental** collision involving the **described auto**. The policy defines **described auto** as the vehicle listed in the **declarations** and **owned** by the **named insured**. Here, the accident did not involve the **described auto** as the 2009 Honda was not listed in the **declarations**. Furthermore, you no longer owned the 2010 Honda, which was the vehicle listed in the **declarations**. Because the 2009 Honda cannot meet the definition of **described auto**, neither liability coverage nor collision coverage is available for this loss.

Therefore, Shelter [Mutual] denies coverage for this claim under this policy."

(Emphases in original.)

¶ 25    In September 2017, Shelter Mutual moved for leave to file a counterclaim for declaratory judgment, and the court granted that motion. The court also severed Shelter Mutual's counterclaim and counts I, II, and III of Flynn's complaint (the counts directed at Shelter Mutual) from count IV of the complaint (the count concerning Krischke), and ordered the severed counts transferred to the chancery division. However, the order granting severance was later vacated on February 1, 2018, and the matter was returned to the municipal division.

¶ 26    Later in September 2017, Shelter Mutual filed its counterclaim for declaratory judgment, seeking an order declaring that it did not owe any duty to either reimburse Flynn for damages to her vehicle or indemnify her for any damage to the vehicle owned by Herskovitz, arising out of the March 16, 2017 accident. Shelter Mutual claimed that it did not owe any coverage to Flynn because the 2009 vehicle "was neither a 'described auto' nor a 'non-owned auto' " under the Shelter Mutual policy and the accident occurred outside of the 30-day window for temporary coverage under the policy. As part of its counterclaim, Shelter Mutual alleged that Flynn did not inform Shelter Mutual of her purchase of the 2009 Civic until after the accident.

¶ 27    In March 2018, Flynn filed an answer and affirmative defenses to the counterclaim, raising as affirmative defenses (1) the claim that Shelter Mutual's request for declaratory judgment was barred because it was seeking a declaration of nonliability for past conduct, which was impermissible, (2) the doctrine of waiver, and (3) the doctrine of unclean hands based on Shelter Mutual keeping Flynn's premiums.

¶ 28    In answering Flynn's affirmative defenses, Shelter Mutual admitted that Krischke was an insurance agent for Shelter Mutual.

¶ 29    Also in March 2018, Herskovitz filed a property damages lawsuit against Flynn arising out of the March 16, 2017 accident. In April 2018, Shelter Mutual filed a complaint for declaratory judgment in the chancery division of the circuit court, seeking a declaration that it did not owe any duty to defend or indemnify Flynn with respect to Herskovitz's lawsuit against her because (1) the vehicle Flynn was driving at the time of the accident was neither a 'described auto' nor a 'non-owned auto' under the Shelter Mutual policy, and (2) the accident occurred outside of the thirty-day window for temporary coverage under the Shelter Mutual policy. Attached to Shelter Mutual's complaint was a March 2018, amended small-claims complaint filed in the municipal division by Herskovitz against Flynn, alleging that Flynn had caused the accident by negligently operating her vehicle and seeking $4606.42 in damages.

¶ 30    Shelter Mutual also filed a motion seeking to sever counts I, II, and III and Shelter Mutual's counterclaim in Flynn's small-claims case and to consolidate them with its newly filed declaratory judgment action in the chancery division. Shelter Mutual claimed that consolidation was proper because all of the claims depended on the resolution of the question of whether Shelter Mutual owed Flynn insurance coverage for the collision.

¶ 31    Thereafter, Flynn, in her small-claims action, moved for summary judgment with respect to counts I, II, and III of her complaint against Shelter Mutual. In support of her motion, Flynn attached, *inter alia*, her affidavit, in which she swore to the truth and accuracy of several exhibits. One exhibit was a screenshot of text messages sent from Krischke to Flynn, which Flynn averred that Krischke had provided to her. One message on the screenshot bore a date of October 31, 2016, and stated: "Hi Danna. Please switch my car insurance to the 2009 White Honda Civic. With the Vin # above." The screenshot from Krischke's phone does not display all of the same texts shown

on the screenshots from Flynn's phone. For example, the texts containing the 2009 vehicle's vehicle identification number are missing in Krischke's screenshot.

¶ 32   The trial court denied Shelter Mutual's motion to sever counts I, II, and III and Shelter Mutual's counterclaim in Flynn's small-claims action, but it granted Shelter Mutual's motion to consolidate over Flynn's objection, ordering Flynn's small-claims action and Shelter Mutual's chancery action consolidated into the chancery action.

¶ 33   In June 2018, Flynn filed an answer and affirmative defenses to Shelter Mutual's declaratory judgment complaint, as well as a two-count counterclaim. Count I of the counterclaim was for breach of contract and alleged that a valid insurance policy existed between Shelter Mutual and Flynn that covered Flynn's defense and liability to Herskovitz. Count II was for abuse of process and alleged that Shelter Mutual had "ulterior purposes" in filing its counterclaim to Flynn's small claims case and seeking transfer to the chancery division; specifically, that Shelter Mutual did so to avoid the simplified and cost-reducing procedures of the small-claims process and to deprive Flynn of the ability to seek a quick resolution of her claims.

¶ 34   Shelter Mutual moved to dismiss count II of Flynn's counterclaim under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2016)), alleging that Flynn had failed to allege sufficient facts to state a cause of action for abuse of process. On August 30, 2018, the court dismissed count II of Flynn's counterclaim with prejudice, finding that "[n]othing in the Counterclaim suggests any improper use of process, citing only standard motions (all granted by several judges) and pleadings, which are generally not actionable as abuses of process."

¶ 35   In September 2018, Shelter Mutual filed a response to Flynn's motion for summary judgment on her small-claims counts and on its counterclaim in that action, as well as a cross-motion for summary judgment on its declaratory judgment complaint and on the small-claims

complaint and counterclaim. Shelter Mutual claimed that its policy did not cover the 2009 vehicle at the time of the collision, so Shelter Mutual was entitled to summary judgment on all counts.

¶ 36    In response to Shelter Mutual's cross-motion for summary judgment, Flynn claimed, *inter alia*, that summary judgment was inappropriate until it was determined whether Krischke had the authority to bind Shelter Mutual because, if so, her failure to act on Flynn's request to change the insurance coverage would be imputed to Shelter Mutual. Flynn also argued that Illinois law required the Shelter Mutual policy to insure her for liability when driving any vehicle she owned. Attached to Flynn's response was a Rule 191(b) affidavit (Ill. S. Ct. R. 191(b) (eff. Jan. 4, 2013)), averring that discovery was necessary to properly determine whether Flynn was covered under the policy. In support of the affidavit, Flynn attached an April 14, 2017 letter sent to her by Shelter Mutual in response to a claim she made against Krischke under Krischke's error and omissions policy. In the letter, Shelter Mutual stated that Krischke received text messages from Flynn concerning a 2009 vehicle but that Krischke "thought you were just following up on the car you had already insured. She had no reason to think or know you would switch to a different vehicle so soon, and you did not specifically tell her you returned the 2010 [vehicle] for the 2009." Shelter Mutual further stated that, after investigation, it found that "Krischke acted reasonably," "there is an inherent risk of miscommunication" when a customer "elects to do business via text," and the "texts at issue here were confusing." Shelter Mutual added that it was not reasonable for Flynn "to just 'assume it [, *i.e.*, switching insurance coverage to the 2009 vehicle,] was taken care of' with no follow up."

¶ 37    On May 3, 2019, the circuit court entered an order on the cross-motions for summary judgment. The court first found that there were no material facts in dispute, finding unpersuasive Flynn's claims that there were questions of fact. The court found that the only factual issues raised

by Flynn were waiver and Krischke's relationship with Shelter Mutual, and it found that "[s]uch relationship is immaterial because Flynn provides no evidence of any assurance/acceptance (or any response whatsoever on [Shelter Mutual's] behalf) of her text-message request to change the covered vehicle." Next, the court found that Flynn conceded that the vehicle she was driving was not the vehicle listed on the policy and found that there was "no support" for the claim that Shelter Mutual had waived any denial of the claim by keeping Flynn's premium payments or by issuing new insurance cards. The court stated:

> "For these reasons, the court must conclude that Shelter [Mutual] owes no duty to defend or indemnify Flynn in connection with the March 16, 2017 incident. Further, because the court finds [Shelter Mutual's] denial of coverage was well grounded, it is also entitled to judgment on Flynn's claim under 215 ILCS 5/155 (for vexatious and unreasonable denial of a claim)."

Accordingly, the court denied Flynn's cross-motion for summary judgment and granted Shelter Mutual's cross-motion, and entered judgment in favor of Shelter Mutual and against Flynn on the complaint and counterclaim. The court stated that its order was final and appealable.

¶ 38    Flynn appealed in May 2019, but this court dismissed her appeal for lack of jurisdiction on April 30, 2020. *Shelter Mutual Insurance Co. v. Flynn*, 2020 IL App (1st) 191123. On remand, Shelter Mutual moved for entry of a finding under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just reason to delay enforcement or appeal of the court's May 3, 2019 judgment. Also, Flynn moved on September 11, 2020, for leave to amend her counterclaim to add counts for *respondeat superior* and reformation. The circuit court denied Flynn leave to amend.

The court also entered a Rule 304(a) finding but stayed Flynn's negligence claim against Krischke pending resolution of the appeal. Flynn timely appealed.

¶ 39                                     II. ANALYSIS

¶ 40     "The purpose of summary judgment is to determine if a question of material fact exists." *Fifth Third Mortgage Company v. McCord*, 2021 IL App (1st) 200512, ¶ 19. Summary judgment should only be entered where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). "Although summary judgment is to be encouraged as an expeditious manner of disposing of a lawsuit, it is a drastic measure and should be allowed only where the right of the moving party is clear and free from doubt." *Wells Fargo Bank, N.A. v. Norris*, 2017 IL App (3d) 150764, ¶ 19. We review the trial court's decision to grant summary judgment *de novo*, which means we perform the same analysis as would the trial court. *Id.*

¶ 41     When, as in this case, the parties file cross-motions for summary judgment, they agree that only questions of law are involved and that the court may decide the issues based on the record. *Allen v. Meyer*, 14 Ill. 2d 284, 292 (1958). However, the filing of cross-motions for summary judgment does not establish that there is no genuine issue of material fact, or obligate a court to grant summary judgment. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. In determining whether the moving party is entitled to summary judgment, the pleadings, depositions, admissions, and affidavits should be construed strictly against the movant and liberally in favor of the opponent. *Kolakowski v. Voris*, 83 Ill. 2d 388, 398 (1980). If the presentation allows for more than one conclusion or inference, including one unfavorable to the movant, the motion should be denied. *Amin v. Knape & Vogt Co., Inc.*, 148 Ill. App. 3d 1075, 1077 (1986).

¶ 42    On appeal, Flynn argues that summary judgment in favor of Shelter Mutual and against her was error because (1) Shelter Mutual's declaratory judgment claims improperly raised the same coverage issue as its pre-suit coverage denial, supplanted an existing remedy, and deprived Flynn of her chosen forum in small-claims court, (2) Flynn was entitled to discovery on the issue of Krischke's authority as Shelter Mutual's agent, (3) Krischke's consent to Flynn's request to switch her vehicle coverage was not required, (4) Krischke's duty and Shelter Mutual's knowledge support reformation of the policy, and (5) Illinois law and the insurance policy require minimum liability coverage for Herskovitz's vehicle damages.

¶ 43    Flynn also argues that she was entitled to summary judgment against Shelter Mutual because it waived its coverage defense and ratified and reformed the policy by issuing new endorsements showing coverage for Flynn's 2009 vehicle on the accident date and by failing to return Flynn's premiums. In addition, Flynn argues that she properly pled a claim for Shelter Mutual's abuse of process; the circuit court abused its discretion by denying her motion to amend her complaint; and she is entitled to attorney fees based on Shelter Mutual's vexatious and unreasonable conduct.

¶ 44                    A. Summary Judgment in Favor of Shelter Mutual

¶ 45    First, Flynn argues that the trial court erred by granting summary judgment in favor of Shelter Mutual because its declaratory judgment claims improperly raised the same coverage issue as its pre-suit coverage denial, supplanted an existing remedy, and deprived Flynn of her chosen forum in small claims court.

¶ 46    A declaratory judgment action requires (1) a plaintiff with a tangible, legal interest; (2) a defendant with an opposing interest; and (3) an actual controversy between the parties concerning

such interests. *Beahringer v. Page*, 204 Ill. 2d 363, 372 (2003); see 735 ILCS 5/2-701 (West 2016). For an actual controversy to exist, the case must present a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof. *Howlett v. Scott*, 69 Ill. 2d 135, 141-42 (1977) (the plaintiff, who had already terminated the relationship at issue, was not entitled to declaratory judgment because his rights were fixed). The declaratory judgment process exists so that the court may address a controversy after a dispute has arisen but before steps are taken that would give rise to a claim for damages or other relief. *Beahringer*, 204 Ill. 2d at 372-73. A suit for declaratory judgment is premature if no actual controversy exists, but as long as the case is not one in which the controversy has progressed so far that there is nothing left for the parties to do except file suit for damages or other consequential relief, the controversy may still be resolved by declaratory judgment.

¶ 47    To support her argument, Flynn cites *Howlett*, 69 Ill. 2d 135 (1977), which noted, *inter alia*, that courts have no authority to issue advisory opinions. The court found premature a declaratory judgment action by the then Illinois Secretary of State for a declaration that a certain business relationship of his had not created a conflict of interest where the defendant, the then Illinois Attorney General, had not indicated his intent to prosecute an action against the plaintiff at the time the declaratory action was filed. The court also found that the plaintiff's termination of the relationship forming the basis of the suit rendered the plaintiff's recourse through the declaratory judgment statute inappropriate because it was not designed to provide mere declarations of nonliability for past conduct. *Id.* at 143.

¶ 48 Flynn, however, provides no analysis of *Howlett* or a cohesive legal argument about how it may be applied to the instant facts to support her claim. " '[A] reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented. The appellate court is not a depository in which the appellant may dump the burden of argument and research.' " *In re Marriage of Auriemma*, 271 Ill. App. 3d 68, 72 (1995), quoting *Thrall Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986). Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) requires a clear statement of contentions with supporting citation of authorities. Ill-defined and insufficiently presented issues that do not satisfy the rule are considered forfeited. *Express Valet, Inc. v. City of Chicago*, 373 Ill. App. 3d 838, 855 (2007). Consequently, Flynn has forfeited review of this issue.

¶ 49 Flynn also argues that Shelter Mutual's declaratory judgment claim improperly supplanted "existing remedies, including as defense to an already filed small claim suit" and "deprived [her] of the small claim court goals for simplified and inexpensive litigation." To support this claim, Flynn cites *Charleston National Bank, Charleston v. Muller*, 16 Ill. App. 3d 80, 360 (1974), which affirmed the dismissal of the drawee bank's declaratory judgment complaint and motion to transfer from small claims court where a small claims suit already had been started by the depositor of a check against the drawee bank. This case, however, is distinguishable from *Muller*. Here, Shelter Mutual denied Flynn's property claim for damage to her vehicle, and she filed suit in small claims court. Shelter Mutual then filed a counterclaim for declaratory judgment in response to that suit. Later, when Flynn tendered the third-party liability defense of the Herskovitz lawsuit, Shelter Mutual filed a separate declaratory judgment action in the chancery division of the circuit court, which is one of the correct ways to respond to a tender where an insurer is denying coverage. See *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 150 (1999).

Furthermore, Shelter Mutual's counterclaim and motion to transfer to the chancery division did not deprive Flynn of filing her claims in her chosen forum, *i.e.*, the Circuit Court of Cook County, and Flynn cites no relevant law or court rule that indicates the transfer within the circuit court was improper.

¶ 50 Second and third, Flynn argues that the trial court erred by granting summary judgment in favor of Shelter Mutual because Flynn was entitled to discovery if there was a dispute on the issue of Krischke's authority as Shelter Mutual's agent to bind it to Flynn's request to change the vehicle coverage. According to Flynn, Krischke's status as Shelter Mutual's agent was dispositive because her assent to Flynn's request to switch her vehicle coverage was not required to reform the policy. We conclude that this claim by Flynn lacks merit. The record establishes that Shelter Mutual admitted that Krischke was its agent. Furthermore, Flynn's negligence claim against Krischke was stayed and remains pending before the circuit court, and Flynn's complaint did not allege claims against Shelter Mutual based on vicarious liability for Krischke's alleged negligence.

¶ 51 Also, the agency relationship between Krischke and Shelter Mutual was immaterial to Flynn's breach of contract claim against Shelter Mutual because no contract concerning coverage for Flynn's 2009 vehicle was formed since the evidence showed that Krischke did not even respond to Flynn's text message to change her vehicle coverage, let alone accept the request or assure Flynn that the change had been made. A contract of insurance is formed where "one of the parties to such a contract proposes to be insured and the other party agrees to insure." *Devers v. Prudential Property & Casualty Insurance Co.*, 86 Ill. App. 3d 542, 544 (1980) (the agent orally assured the insured that she would have coverage). See also *Zannini v. Reliance Insurance Company of Illinois, Inc.*, 147 Ill. 2d 437, 442 (1992) (the agent told the insured that coverage for the jewelry in question would be provided); *Wille v. Farmers Equitable Insurance Co.*, 89 Ill. App. 2d 377,

379 (1967) (the agency sent the insured's application for insurance to the insurer and told the insured he was covered). Flynn presented no evidence that Krischke ever agreed before the collision to procure coverage for Flynn's 2009 vehicle. The evidence shows that Flynn's text message concerning her 2009 vehicle went without a response from Krischke, whereas Flynn's other earlier text messages had received responses from Krischke.

¶ 52    Fourth, Flynn argues that the trial court erred by granting summary judgment in favor of Shelter Mutual because Krischke's duty and Shelter Mutual's knowledge support reformation of the policy. Flynn, citing *Talbot v. Country Life Insurance Co.*, 8 Ill. App. 3d 1062, 1065 (1973), argues that Krischke had a legal obligation to act with reasonable promptness on Flynn's application to change the covered auto, either by providing the desired coverage or notifying her of the rejection of the risk so that she would not be lulled into a feeling of security or put to prejudicial delay in seeking protection elsewhere. Flynn's argument lacks merit. As stated above, her negligence claim against Krischke is stayed and pending in the circuit court, and she has no claim against Shelter Mutual for vicarious liability.

¶ 53    Fifth, Flynn argues that the trial court erred by granting summary judgment in favor of Shelter Mutual because Illinois law and the insurance policy require minimum liability coverage for Herskovitz's vehicle damages. Specifically, Flynn argues that Shelter Mutual's 30-day coverage provision for newly owned vehicles conflicts with sections 7-317(b)(3), 7-203, 7-601, and 7-602 of the Illinois Vehicle Code (625 ILCS 5/7-317(b)(3), 7-203, 7-601, 7-602 (West 2016)). These sections provide, respectively and in relevant part, that  (1) a motor vehicle liability policy shall insure every named insured and any other person using any motor vehicle owned by the named insured against loss from liability from such use for $20,000 for damage to the property of others as a result of any one accident, (2) motor vehicle insurance policies are subject to a

minimum coverage of $20,000 for injury to or destruction of the property of others, (3) a policy shall be issued in amounts no less than the minimum amounts set for destruction of property under section 7-203, and (4) no insurer shall issue an insurance card in connection with an insurance policy that does not provide the liability insurance coverage required under section 7-601. *Id.*

¶ 54 "The fundamental objective of statutory construction is to ascertain and give effect to the intent of the legislature." *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 21. "The most reliable indicator of legislative intent is the statutory language, given its plain and ordinary meaning." *Id.* "A reasonable construction must be given to each word, clause, and sentence of a statute, and no term should be rendered superfluous." *Id.* " '[W]hen statutory language is plain and certain the court is not free to give it a different meaning.' " *Kalkman v. Nedved*, 2013 IL App (3d) 120800, ¶ 12 (quoting *In re Estate of Hoehn*, 234 Ill. App. 3d 627, 629 (1992)). "[A] court may not depart from the plain statutory language by reading into it exceptions, limitations, or conditions not expressed by the legislature." *Id.* "It is a 'fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used. [Citations.]' " *Corbett v. County of Lake*, 2017 IL 121536, ¶ 27 (quoting *Deal v. United States*, 508 U.S. 129, 132 (1993)). The terms in a statute are not to be considered in a vacuum; instead, "the words and phrases in a statute must be construed in light of the statute as a whole, with each provision construed in connection with every other section. [Citations]" (Internal quotation marks omitted.) *Id.*

¶ 55 Flynn's argument focuses on section 7-317(b)(3) of the Vehicle Code, but sections 7-317(b)(1) and (b)(2) make clear that a liability insurance policy

"1. Shall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby intended to be granted;

2. Shall insure the person named therein and any other person using or responsible for the use of such motor vehicle or vehicles with the express or implied permission of the insured;" 625 ILCS 5/7-317(b)(1), (b)(2) (West 2016)).

¶ 56    Shelter Mutual's policy did not violate section 7-317 because the policy adequately described the motor vehicles with respect to which coverage was intended to be granted. Furthermore, section 7-317 deals with minimum liability limits and ensures that those limits will not be reduced when the operator of the vehicle is not the named insured, as is the case with coverage under omnibus clauses. See generally *State Farm Mutual Automobile Insurance Co. v. Illinois Farmers Insurance Co.*, 226 Ill. 2d 395 (2007). Section 7-317 does not concern the legitimacy of Shelter Mutual's described auto provision and attendant definitions under the policy. Accordingly, we reject Flynn's argument that Shelter Mutual's policy provisions violate Illinois public policy.

¶ 57    We conclude that the trial court properly granted Shelter Mutual's summary judgment motion against Flynn. Shelter Mutual did not owe any coverage to Flynn because the 2009 vehicle "was neither a 'described auto' nor a 'non-owned auto' " under the Shelter Mutual policy; the accident occurred outside of the 30-day window for temporary coverage under the policy; and Flynn did not inform Shelter Mutual of her purchase of the 2009 vehicle until after the accident. After the 30 days of temporary coverage lapsed, Flynn did not purchase a policy for the 2009 vehicle. Because no policy was purchased for the 2009 vehicle after Flynn acquired it, and the

accident did not occur during the available 30 day temporary coverage, there is no coverage for that loss.

¶ 58    Further, the policy's liability coverage applies to damages owed by an insured. The policy defines damages as money that an insured must pay because of an occurrence resulting from the ownership, maintenance or use of the *described auto*. The collision coverage applies to property damage that results from an accidental collision involving the *described auto*. The policy defines "described auto" as the vehicle listed in the declarations and owned by the named insured. Here, the accident did not involve the described auto because the 2009 vehicle was not listed in the declarations. Furthermore, Flynn no longer owned the 2010 vehicle, which was the vehicle listed in the declarations. Because the 2009 vehicle could not meet the definition of "described auto," neither liability coverage nor collision coverage was available for this loss.

¶ 59    Therefore, Shelter Mutual did not owe Flynn coverage for her collision and liability claims under the policy.

¶ 60                    B. Denial of Flynn's Summary Judgment Cross-Motion

¶ 61    Flynn argues that she was entitled to summary judgment against Shelter Mutual because it waived its coverage defense and ratified the policy by re-issuing documents stating coverage for Flynn's 2009 vehicle for the period covering the accident after knowing its policy defense regarding the misdescription, which Flynn refers to as a mutual mistake. According to Flynn, Shelter Mutual took her additional premium two weeks after the accident and then twice issued to her evidence of insurance cards showing coverage for the 2009 vehicle for the period from February 16, 2017, through August 16, 2017, which included the March 16, 2017 accident date.

Flynn argues that the policy should be reformed for mutual mistake because Shelter Mutual waived any right to avoid it by not seeking to rescind it.

¶ 62    Flynn contends that once Shelter Mutual learned of the mistake of the policy describing a vehicle she did not own, Shelter Mutual should have sought rescission and returned her unearned premiums. However, instead of returning her premiums, Shelter Mutual collected an additional $2.80 and endorsed the policy to describe the 2009 vehicle. Flynn contends that Shelter Mutual, by denying coverage based on the misdescription of her ownership of the 2010 vehicle through the time of the accident, rescinded the contract for the period she did not own any described auto, but without seeking authority from a court or returning Flynn's premiums. Flynn argues that Shelter Mutual cannot both rescind the policy for the period that she did not own the 2010 vehicle, and ratify the contract by keeping those premiums.

¶ 63    "Waiver arises from an affirmative act, is consensual, and consists of an intentional relinquishment of a known right." *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 326 (2004). Waiver may be either expressed or implied, and arises from acts, words, conduct, or knowledge of a party. *Id.*

¶ 64    First, Flynn's argument regarding a mutual mistake lacks merit.

> "When there is a mutual mistake of fact as to a material term, the contract is voidable and can be rescinded by an adversely affected party unless that party bears the risk of the mistake. *Jordan v. Knafel*, 378 Ill. App. 3d 219, 234 (2007); Restatement (Second) of Contracts § 152 (1981). A mutual mistake exists where both parties come to an understanding, then, unintentionally, a drafted and signed contract fails to express the true agreement. *Cameron v. Bogusz*, 305 Ill. App. 3d 267, 272 (1999)." *Alliance Property*

*Management, Ltd. v. Forest Villa of Countryside Condominium Ass'n*, 2015 IL App (1st) 150169, ¶ 39.

Here, there was no understanding reached regarding the 2009 vehicle before the March 2017 accident and Shelter Mutual did not know that Flynn had traded in the 2010 vehicle for the 2009 vehicle until after she filed a claim for the March 2017 accident. Consequently, there was no mutual mistake concerning the policy for the 2010 vehicle.

¶ 65    Flynn claims that Shelter Mutual waived its coverage defense and agreed post-accident to her vehicle change request when Shelter Mutual's customer service department sent her, in response to her request, two evidence of insurance cards describing her 2009 vehicle for the policy period including the accident date. Flynn contends that "[w]here a set of facts that exist on a certain date would allow for denial of a claim, but after that date the insurer then issues an amended evidence of insurance card providing that coverage is effective on the date of the accident, the policy language incorporates the amended declarations page into the policy." Flynn cites *Siwek v. White*, 388 Ill. App. 3d 152 (2009), to support her contention but her reliance on *Siwek* is misplaced.

¶ 66    In *Siwek*, the insurance company claimed that it had cancelled an insurance policy on May 13, 2003, prior to a July 27, 2003 automobile accident involving its insured. *Id.* at 154. However, the insured presented a memo from the independent insurance broker, dated May 19, 2003 (after the supposed cancellation, but before the accident), containing an amended insurance identification card and declaration page issued by the insurer. *Id.* The court found that the declaration page was incorporated into the policy, based on language in the policy itself that so incorporated the declarations. *Id.* at 159.

¶ 67    In contrast, here, the evidence of insurance cards including the 2009 vehicle was issued after the collision, not before like in *Siwek*. Moreover, *Siwek* does not stand for the proposition that an insurance card is incorporated into the policy, but rather that a declaration page is, when it is issued before the accident. "[A]n insurance card is not a substitute for the policy language," but is "simply a form of 'evidence' *** that a driver may present as proof of insurance to a 'law enforcement officer.' " *American Service Insurance Co. v. Arive*, 2012 IL App (1st) 111885, ¶ 13, citing 625 ILCS 5/7-602 (West 2010) (noting that the insurance card "does not constitute any part of [an] insurance policy"). Notably, in *Arive*, the court found that despite the fact that an insurance company had not complied with the Illinois law requirement that excluded drivers be listed on the insurance card, that omission did not void the actual exclusion in the policy. *Id.* ¶¶ 15-17.

¶ 68    Furthermore, the evidence of insurance cards Shelter Mutual sent to Flynn at her request both make clear in their title—*i.e.*, "Evidence of Insurance as of 4/26/2017," and "Evidence of Insurance as of 5/9/2017"—that the insurance referred to was effective after the March 16, 2017 accident. Shelter Mutual's issuance of evidence of insurance information to Flynn when she finally added the 2009 vehicle to her policy (after the accident) did nothing to change or alter the coverage that was in place as of the date of the collision.

¶ 69    Moreover, Flynn argues that Shelter Mutual keeping her premium somehow constituted waiver, but this argument has no basis in law, as evidenced by the cases relied on by Flynn. Both cases cited by Flynn—*Insurance Co. of Illinois v. Brown*, 315 Ill. App. 3d 1168 (2000), and *Auto-Owners Insurance Co. v. Yocum*, 2013 IL App (2d) 111267—involved the *cancellation* of a policy, which is not at issue here. Flynn has not presented any legal support for her contention that Shelter Mutual waived any coverage defenses by keeping her premiums in this case, where she simply did

not obtain coverage for her new car and, as a result, the coverage continued on her old car. Shelter Mutual did not cancel her policy at that time. Rather, Flynn did not take the necessary steps to insure her new car.

¶ 70    Flynn complains about Shelter Mutual's alleged ratification and waiver based on Flynn's perception of Shelter Mutual's imperfect rescission. The trial court rightly rejected any such argument because nothing Shelter Mutual did indicated that it pursued rescission or intended to waive its coverage denial. Section 154 of the Insurance Code (215 ILCS 5/154 (West 2016)), which governs rescission of insurance policies, allows an insurer to rescind a policy for misrepresentations of the insured only in the first year of the policy and only if the misrepresentations either were made with the intent to deceive or materially affect the risk assumed by the insurer. Shelter Mutual never asserted section 154 because Shelter Mutual never sought rescission.

¶ 71    We conclude that the trial court did not err when it denied Flynn's cross-motion for summary judgment.

¶ 72                              C. Abuse of Process

¶ 73    Next, Flynn argues that the trial court erroneously dismissed her claim against Shelter Mutual for abuse of process because she properly pled that claim by alleging that Shelter Mutual had an ulterior purpose for seeking a declaration of its duties under its insurance policy. Specifically, Flynn alleged that Shelter Mutual pled its defense, which was available in small claims court, as a declaratory counterclaim to seek a transfer to the chancery division and thereby deny Flynn her chosen small claim forum. Flynn also alleged that "(1) [Shelter Mutual] obtained transfer and consolidation process to seek in chancery a declaration of non-liability for its past

denial of Flynn's claim which is beyond the purview of transfer and consolidation into chancery, (2) thereby compelling Flynn to litigate her claim and [Shelter Mutual's] defense in the chancery division without the simplifying and inexpensive small claim process, and (3) which is something she could not have otherwise been legally compelled to do because [Shelter Mutual] had already denied her claim."

¶ 74    A section 2-615 motion attacks the legal sufficiency of a complaint. Such a motion does not raise affirmative factual defenses but alleges only defects on the face of the complaint. *Urbaitis v. Commonwealth Edison*, 143 Ill. 2d 458, 475 (1991). In ruling on a section 2-615 motion to dismiss, the court must accept as true all well-pleaded facts in the complaint and all reasonable inferences that can be drawn therefrom. *McGrath v. Fahey*, 126 Ill. 2d 78, 90 (1988). In making this determination, the court is to interpret the allegations of the complaint in the light most favorable to the plaintiff. *Id.* However, this court will disregard mere conclusions of law or facts not supported by specific factual allegations. *White v. DaimlerChrysler Corp.*, 368 Ill. App. 3d 278, 282 (2006). The question presented by a motion to dismiss a complaint for failure to state a cause of action is whether sufficient facts are contained in the pleadings which, if established, could entitle the plaintiff to relief. *Urbaitis v. Commonwealth Edison*, 143 Ill. 2d 458, 475 (1991). A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved under the pleadings which will entitle the plaintiff to recover. *Reuben H. Donnelley Corp. v. Brauer*, 275 Ill. App. 3d 300 (1995). We review *de novo* a trial court's ruling under section 2-615 of the Code of Civil Procedure. *Poruba v. Poruba*, 396 Ill. App. 3d 214, 215 (2009).

¶ 75    The elements of a cause of action for abuse of process are (1) the existence of an ulterior purpose or motive, and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings. *Kumar v. Bornstein*, 354 Ill. App. 3d 159, 165 (2004).

> "In order to satisfy the first element, a plaintiff must plead facts that show that the defendant instituted proceedings against him for an improper purpose, such as extortion, intimidation, or embarrassment. In order to satisfy the second element, the plaintiff must show that the process was used to accomplish some result that is beyond the purview of the process. [Citation.] The elements are strictly construed, as the tort of abuse of process is not favored under Illinois law. [Citation.]" *Id.* at 165-66.

"The mere filing of a lawsuit even with a malicious motive, does not constitute an abuse of process." *Commerce Bank, N.A. v. Plotkin*, 255 Ill. App. 3d 870, 872 (1994). The word "process" is given its literal meaning and means process issued by the court, under its official seal, and is distinguished from pleadings, which are created and filed by the litigants. *Id.*; see also *Holiday Magic, Inc v. Scott*, 4 Ill. App. 3d 962, 967-68 (1972) (defining "process" as "any means used by the court to acquire or to exercise its jurisdiction over a person or over specific property," such as a summons, and specifically finding that pleadings are not considered "process").

¶ 76    Flynn failed to properly plead the first element of abuse of process, the existence of an ulterior motive or purpose in Shelter Mutual's actions in this case other than its stated motive of seeking and obtaining a declaration of its duties under its insurance policy. Instead, Flynn pled only conclusory allegations, without any support, that Shelter Mutual intended to avoid the small claims court and deprive Flynn of a quick resolution of her claim. Conclusory allegations such as these are not enough to sufficiently plead the first element of an abuse of process. See *Reed v.*

*Doctor's Associates, Inc.*, 355 Ill. App. 3d 865, 875-76 (2005) (finding that conclusory allegations that a party intended intimidation and coercion were insufficient to support a claim for abuse of process).

¶ 77    Flynn also failed to plead that Shelter took any improper action in the use of legal process. Instead, she alleged that Shelter Mutual's allegations, pleadings and motions were somehow improper because she was unable to conduct the litigation under the lax rules of the small claims court, but allegations and pleadings do not constitute "process" under Illinois law. There was no allegation of any misuse of "process" issued by the court. Furthermore, all the motions were brought under and granted pursuant to the Code of Civil Procedure and the circuit court's own rules. The law does not contemplate an action for abuse of process on the facts alleged in this case. We therefore conclude that the circuit court was correct in determining that no action for abuse of process had been stated by the pleadings.

¶ 78                              D. Motion to Amend Counterclaim

¶ 79    Next, Flynn argues that the circuit court abused its discretion by denying her motion to amend her counterclaim after her first appeal to add claims for vicarious liability (based on Krischke's relation to Shelter Mutual and alleged failure to notify Flynn of rejecting her vehicle coverage change request) and reformation of the policy on the grounds of mutual mistake (based on "the policy conformity provision promising reformation for conflicts, and Section 154 barring rescission on renewals"). She argues that her amendments are material and have more specific allegations. She also argues that Shelter Mutual was not surprised because she did not move to amend during the pleadings; her discovery, which the court had stayed before ruling on Shelter Mutual's summary judgment motion, went directly to Krischke's authority as Shelter Mutual's agent; Flynn timely sought to amend 35 days after the case was remanded from this court; and it

was her first request to amend her pleading and was not prevented by a prior non-final summary judgment order.

¶ 80    When Flynn attempted to amend her counterclaim to add claims under *respondeat superior* and reformation, the trial court denied leave, finding that Flynn did

"not seek to cure any defects in pleading or add claims based on newly discovered evidence. Instead, she simply seeks to reargue her already pled and rejected theories that the Policy should be reformed based on a mistake and that Shelter Mutual should be bound by the alleged mistakes of its agent Danna Krischke. Indeed, Flynn herself argues that the proposed amendment 'simply makes[s] more specific what was previously alleged.' While amendment is liberally granted under Illinois law, such an attempt at a second bite at the apple after a summary judgment ruling on those very issues is plainly inappropriate and [Flynn] offers no explanation for why [she] did not seek leave to amend sooner. (Footnotes omitted.)"

¶ 81    The trial court shall permit pleadings to be amended upon just and reasonable terms before or after the entry of summary judgment. 735 ILCS 5/2-1005(g) (West 2016); see also 735 ILCS 5/2-616 (West 2016)) ("At any time before final judgment amendments may be allowed on just and reasonable terms ***."). In order to determine whether the trial court has abused its discretion, we must look at four factors: (1) whether the proposed amendment would cure the defective pleading, (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment, (3) whether the proposed amendment is timely, and (4) whether previous opportunities to amend the pleading could be identified. *Kupianen v. Graham*, 107 Ill. App. 3d 373, 377 (1982). Because a trial court has broad discretion in motions to amend pleadings prior to

entry of final judgment, a reviewing court will not find that denial of a motion to amend is prejudicial error unless there has been a manifest abuse of such discretion. *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 274 (1992). An abuse of discretion occurs when no reasonable person would take the position adopted by the trial court or when the trial court acts arbitrarily, fails to employ conscientious judgment, and ignores recognized principles of law." *In re Commissioner of Banks and Real Estate*, 327 Ill. App. 3d 441, 476 (2001).

¶ 82    We conclude that the trial court did not abuse its discretion by denying Flynn's motion to amend. First, Flynn's proposed amended pleading did not cure any defective pleading but, rather, sought to plead new theories—*i.e.*, *respondeat superior* and reformation of the policy. Second, the amendment would prejudice Shelter Mutual with additional unnecessary litigation after it defended itself against Flynn's own appeal. Third, the amendment is untimely. Flynn had more than three years to amend her claims but did not do so until after she lost on cross-motions for summary judgment and after she appealed that judgment. Moreover, nothing in her motion to amend or proposed amended pleadings explained the delay. Fourth, Flynn had ample opportunity to amend her pleadings at any earlier time in the case because she did not identify any newly discovered information that forms the basis for the additional counterclaims. Rather, her proposed claims are based on facts available to her when she first filed her case against Shelter Mutual in July of 2017.

¶ 83                                   E. Attorney Fees

¶ 84    Finally, Flynn argues that she is entitled to attorney fees based on Shelter Mutual's vexatious and unreasonable conduct. She states that Shelter Mutual refused coverage for Flynn's liability to Herskovitz, refused to defend Flynn in the Herskovitz suit, and deprived Flynn of the

funds to pay her car repairs and rental expenses. She contends that Shelter Mutual's denial of her claims for coverage is a clear and unambiguous violation of Illinois financial responsibility law.

¶ 85    Section 155 of the Code provides, in pertinent part, for the award of attorney fees in cases where the insurer caused an unreasonable delay in settling a claim, and it appears to the court that such action or delay was vexatious and unreasonable. *Mobil Oil Corp. v. Maryland Casualty Co.*, 288 Ill. App. 3d 743, 751-52 (1997). "A court should consider the totality of the circumstances when deciding whether an insurer's actions are vexatious and unreasonable. Factors to consider are the insurer's attitude, whether the insured was forced to sue to recover, and whether the insured was deprived of the use of her property. If a bona fide dispute existed regarding the scope of the insurance coverage, an insurer's delay in settling the claim may not violate section 155." *Valdovinos v. Gallant Insurance Co.*, 314 Ill. App. 3d 1018, 1021 (2000). "While the question of whether the insurer's action and delay are vexatious and unreasonable is a factual one, it is a matter for the discretion of the trial court; the trial court's determination will not be disturbed unless an abuse of discretion is demonstrated in the record." *Dark v. United States Fidelity & Guaranty Co.*, 175 Ill. App. 3d 26, 30-31 (1988).

¶ 86    Based on our above-stated analysis in this case and determinations that the circuit court did not err in concluding that (1) Shelter Mutual owed no duty to defend or indemnify Flynn in connection with the March 16, 2017 collision, and (2) Shelter Mutual's denial of coverage was well grounded, the trial court did not abuse its discretion by denying Flynn's request for attorney fees under section 155 of the Insurance Code (215 ILCS 5/155 (West 2016)).

¶ 87                                III. CONCLUSION

¶ 88    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 89    Affirmed.